```
UNITED STATES DISTRICT COURT
   MIDDLE DISTRICT OF TENNESSEE
       NORTHEASTERN DIVISION
```

DOUGLAS B. STALLEY, on behalf )
of the United States of       )
America,                      )
                              )
          Plaintiff,          )
                              )
     v.                       )    Case No. 2:06-0074
                              )    Judge Echols
SUMNER REGIONAL HEALTH        )
SYSTEMS, INC., a Tennessee    )
Corporation; and JOHN DOES 1  )
through 10, Unknown           )
Defendants,                   )
                              )
          Defendants.         )

## **MEMORANDUM**

Pending before the Court is Defendant Sumner Regional Health Systems, Inc.'s ("Sumner's") Motion to Dismiss (Docket Entry No. 10), to which Plaintiff has responded in opposition and requested oral argument (Docket Entry No. 19) and Sumner has replied (Docket Entry No. 23). Also before the Court is Sumner's Motion to Strike Plaintiff's Response (Docket Entry No. 38). Finally, Sumner has filed a Motion Requesting Oral Argument (Docket Entry No. 12).

### I. INTRODUCTION

This is an action brought by Douglas B. Stalley ("Stalley") purportedly on behalf of the United States under the Medicare Secondary Payer ("MSP") statute. Stalley is not a Medicare beneficiary, nor does he claim that he suffered any personal harm by the Defendants' alleged violation of the law.

1

In this case, Plaintiff is acting as a self-appointed bounty hunter for the government based upon the alleged negligence ("injurious conduct," Complaint ¶ 11) committed by Defendant Sumner, a Medicare provider hospital, in rendering medical services to Medicare patients. Plaintiff apparently learned of such alleged negligence by perusing various incident reports and investigations, internal peer reviews, risk management programs, billing and diagnostic codes, and mandatory inspections and surveys. (Id. ¶ 10). None of these vague, obtuse accusations have been determined to establish liability or damages against Sumner or to require reimbursement to Medicare. It is apparently Plaintiff's position that such claims may be proven during the course of this litigation without such determination of wrongdoing or obligation to reimburse Medicare for the extra medical services furnished to patients which were caused by Sumner.

Other such cases have been brought by Stalley, as well as Erin Brockovich, an activist of some renown. The actions have been uniformly dismissed. See, Brockovich v. Loma Linda Univ. Med. Ctr., Case No. 06CV0834 (C.D. Cal. Nov. 16, 2006); Stalley v. Triad Hosp., Inc., Case No. 3:06CV0093-WRW (W.D. Ark. Nov. 14, 2006); Brockovich v. Scripps Health, Case No. 06-CV-1569-W (NLS) (S.D. Cal. Nov. 7, 2006); Brockovich v. Sharp Healthcare, Inc., Case No. 06-CV-1628-W (NLS) (S.D. Cal. Nov. 7, 2006); Brockovich v. HCA, Inc., Case No. CV 06-4501 (C.D. Cal. Oct. 25, 2006); Stalley v. Catholic Health Initiatives, 2006 WL 3091324 (E.D. Ark. Oct. 20,

2006).[1]  The same sorts of issues addressed in those cases are presented in this case as well.

## II. FACTUAL ALLEGATIONS

For present purposes, the facts alleged in the Complaint must be accepted as true.  Those facts are as follows.

Defendant Sumner is a participant provider of hospital and medical services in the Medicare program.  Sumner's obligations as a participant provider are regulated by federal statute (42 U.S.C. § 1395(b)(2)(A)) and regulations (42 C.F.R. §§ 411 & 489), as well as by a Provider Agreement between Sumner and Medicare.  (Complaint ¶ 3).  Sumner and its subsidiaries own, operate, and/or manage Medicare-participating hospitals.  (Id).

In addition to Sumner, Plaintiff has sued ten "John Does." Plaintiff is unaware of the true names and capacities of the John Doe Defendants but asserts that they are persons or entities which engaged in the same sort of alleged misconduct by Sumner and may include insurance companies.  (Id. ¶ 4).

Collectively, the Defendants are alleged to "constitute 'Primary Plans'" under the MSP.  As such they are primary payers under the MSP.  (Id. ¶ 5).

Stalley alleges Sumner and the Doe defendants "caused harm to Medicare recipients who were patients in Sumner's hospitals, thereby triggering legal obligations on the part of Defendants to pay for any consequential medical service, treatment or

---

[1]Because the same plaintiffs are involved in these cases, they will be cited in this opinion by the name of the defendant.

3

medication." (Id.). He asserts that when Sumner's own conduct caused injury to Medicare recipients, that conduct triggered liability under the MSP on behalf of Defendants as primary payers to pay Medicare for any bill incurred as a result of such conduct or to reimburse Medicare for expenditures for which Medicare advanced conditional payment. (Id. ¶ 7).

Stalley further alleges the Defendants "breached their duties to Medicare by not paying for the care that injured Medicare recipients received as a result of Sumner's conduct and further by not reimbursing Medicare after Medicare provided conditional payment for the care that such Medicare recipients received as a result of Sumner's conduct." (Id. ¶ 8).

Stalley claims Medicare advanced millions of dollars in payments to pay for the cost of treating Medicare recipients who were injured by Sumner's own conduct and did not inform or reimburse Medicare for the costs Medicare incurred as a result of Sumner's conduct. (Id. ¶ 16). Stalley seeks double damages under the MSP, that is, damages in an amount twice that which Defendants were obligated to pay or reimburse Medicare but failed to do.

While the foregoing are the relevant facts as set forth in the Complaint, there are several other facts which are not alleged that are relevant to the issues presented to the Court. Stalley does not allege he was a Medicare recipient or even that he was Medicare-eligible. Stalley also does not allege that he was personally injured by the Defendants' alleged misconduct. Nor does

4

he allege he has permission of the United States to sue on its behalf.

### III. APPLICATION OF LAW

#### A. Procedural Matters

Prior to reaching Sumner's Motion to Dismiss, the Court will address two procedural matters. First, Sumner has filed a Motion to Strike Plaintiff's Response (Docket Entry No. 38). That Motion is directed to Plaintiff's Response (Docket Entry No. 37) to Sumner's filing of supplemental authority in support of its position that dismissal is warranted in this case. As Sumner correctly observes, Plaintiff's response is effectively a sur-reply to Sumner's Motion to Dismiss and rehashes previous arguments and raises new arguments. Nevertheless, the response also points out that the supplemental authority is not binding and should not be followed by this Court. The Court declines to strike the response.

Second, Sumner has filed a Motion Requesting Oral Argument (Docket Entry No. 12) and Stalley has requested oral argument in its Memorandum in Opposition to Defendant's Motion to Dismiss (Docket Entry No. 19). This Court finds that oral argument will not materially advance the arguments which are well-presented in the parties' memoranda and accordingly the requests for oral argument will be denied.

#### B. Motion to Dismiss

Sumner has moved to dismiss Stalley's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

5

**1.   Standards of Review**

A Rule 12(b)(1) motion which attacks a claim for lack of jurisdiction over the subject matter on its face requires that the court accept the non-moving party's allegation of facts as true. DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). Where subject matter jurisdiction is challenged, the party asserting jurisdiction bears the burden of establishing jurisdiction. Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). Further, "the plaintiff, as the party invoking federal subject matter jurisdiction, has the burden of persuading the court that all of the requirements necessary to establish standing to bring the lawsuit have been met." Courtney v. Smith, 297 F.3d 455, 459 (6th Cir. 2002). The Court must be satisfied the jurisdictional and standing requirements are met before addressing the substance of Plaintiff's claims on the merits.

In evaluating a complaint under Rule 12(b)(6) which challenges the Complaint for failure to state a claim upon which relief may be granted, the Court also must accept as true all of plaintiff's allegations and resolve all doubts in plaintiff's favor. See Craighead v. E.F. Hutton & Co., 899 F.2d 485, 489 (6th Cir. 1990). This does not mean, however, that the Court must accept the presumptions or legal conclusions relied upon by the plaintiff to justify the claim. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). But, the Court should not dismiss a complaint unless it appears beyond doubt that plaintiff cannot prove any set

6

of facts in support of his claims that would entitle him to relief. See, Craighead, 899 F.2d at 489.

### 2. Summary Of Relevant Medicare Provisions And The Parties' Arguments

"Medicare is a federal health insurance program, generally benefitting the aged and the disabled." Catholic Health Initiatives, 2006 WL 3091324 at *1. From 1965 until 1980, Medicare was the primary payer of health care costs for Medicare-eligible individuals. Mason v. American Tobacco Co., 212 F.Supp.2d 88, 91 (E.D.N.Y. 2002). However, in an effort to curb spiraling costs, Congress enacted the MSP in 1980. Catholic Health Initiatives, 2006 WL 3091324 at *1.

The MSP "'makes Medicare the secondary payer for medical services provided to Medicare beneficiaries whenever payment is available from another primary payer.'" Glover v. Liggett Group, Inc., 459 F.3d 1304, 1306 (11th Cir. 2006)(citation omitted). "'This means that if payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay." Id. Effectively, Medicare acts as a "secondary insurer" because "if a beneficiary has primary medical insurance, the private insurer - and not Medicare - is the payor of first resort." United Seniors Assoc., Inc. v. Philip Morris, USA, 2006 WL 2471977 at *2 (D. Mass. 2006).

Because the existence of primary medical insurance may not be known at the time services are rendered, Medicare makes conditional payments for covered services if the primary payor is not expected

7

to pay promptly.  Id.  "To facilitate recovery of conditional payments, the MSP provides for a government action against any entity that was responsible for payment under a primary plan, 42 U.S.C. § 1395y(b)(2)(B)(iii), and subrogates the United States to the rights of a Medicare beneficiary to collect payment under a primary plan for items already paid by Medicare, § 1395y(b)(2)(B)(iv)."  Glover, 459 F.3d at 1307.  "The MSP also creates a private right of action with double recovery to encourage private parties who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights." Id. citing 42 U.S.C. § 1395y(b)(3)(A).  Plaintiff seeks to recover double damages based on these provisions.

Sumner has moved to dismiss for various reasons.  It claims Plaintiff does not have standing, there is no liability under the MSP for unadjudicated or potential tort claims, and the litigation does not present a justiciable controversy.

Plaintiff claims he is not seeking to represent individual Medicare recipients allegedly harmed by Defendants but instead has standing to pursue this case on behalf of the United States because the MSP is a *qui tam* statute which requires no personal injury. Plaintiff claims Sumner is liable to Medicare under the MSP, its provider agreements, and applicable regulations, and the claims made do not have to be finally adjudicated, only that they are obligated.  Plaintiff also claims this case is justiciable inasmuch as the government suffered an injury because additional Medicare

8

payments caused by Sumner's own negligence and errors that should have been reimbursed to the government were not.

### 3. Standing

Standing is a jurisdictional requirement because if a Plaintiff does not have standing to bring a claim, a federal court is without power to rule on the issues presented. See, Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 475-76 (1982)(footnote omitted)("[O]f one thing we may be sure: Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States.")  The standing doctrine incorporates both constitutional requirements and prudential considerations, and serves to limit federal jurisdiction to "cases and controversies" as required by Article III of the U.S. Constitution. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61 (1992).  The test for standing is as follows:

> First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id.

In this case, Stalley does not have standing in the traditional sense. The Complaint is bereft of any allegation that Stalley suffered any damages.  He does not allege that he is a

9

Medicare beneficiary; that he is Medicare eligible; or that he was denied coverage for some medical item or procedure. The conduct complained of is described in vague, general terms without reference to dates, patients, doctors, care-givers, or administrators. Although Plaintiff alleges Sumner was negligent in acting and failing to act in various general ways, it is difficult to trace the damages claimed to the challenged actions of Sumner. Moreover, any favorable decision in this action cannot redress an injury to Stalley which never occurred. Accordingly, the Court finds Stalley lacks standing under Article III. See, Frazer v. CNA Ins. Co., 374 F.Supp.2d 1067, 1083 (N.D. Ala. 2005).

Recognizing these shortcomings to establish standing, Stalley claims that he is not bringing this suit on behalf of himself, but instead brings suit in the nature of a *qui tam* action on behalf of the United States of America. That is, the MSP is a *qui tam* statute, the United States is the real party in interest, and Stalley is acting as a private party relator on behalf of the government.

This same argument, brought by this same Plaintiff in a case raising virtually identical claims, was rejected by the federal district court in Catholic Health Initiatives:

> [Plaintiff] contends that the MSP statute is a *qui tam* statute and therefore he has standing to bring his claim. Plaintiff's construction of the MSP statute is at odds with the definition of a *qui tam* action.
> A *qui tam* action may be brought by a private person (the relator) in the name of the government against the alleged false claimant. Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 769, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000)("*Qui tam* is

10

> short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.' The phrase dates from at least the time of Blackstone."). A *qui tam* relator sues on behalf of the government as an agent of the government, "which is always the real party in interest." <u>United States ex rel. Rodgers v. State of Arkansas</u>, 154 F.3d 865, 868 (8th Cir. 1998)(citation omitted). The government makes a partial assignment of its claim to the private litigant. 529 U.S. at 773 ("we are asserting that a <u>qui tam</u> relator is, in effect, suing as a *partial* assignee of the United States"). The relator shares in the recovery by the government. For example, under the False Claims Act, 31 U.S.C. § § 3729 *et seq* (FCA), the relator gets between 15 and 25 percent of the recovery if the government prosecutes the action; if the government does not intervene, the relator gets between 25 and 30 percent. 31 U.S.C. § 3730(d)(1)-(2).

<u>Catholic Health Initiatives</u>, 2006 WL 3091324 at *3. The court proceeded to observe that "there is nothing in the language of the MSP to provide for an action on behalf of the United States. Rather, the MSP allows only for a private cause of action for one who has been injured." <u>Id</u>.; <u>see</u>, <u>Frazer</u>, 374 F.Supp.2d at 1083 (plaintiff could not sue under MSP as *qui tam* plaintiff or private attorney general where she did not allege personal injury or even the prospect of injury). This Court agrees with the court's analysis in <u>Catholic Health Initiatives</u> that the MSP does not allow for a private *qui tam* action on behalf of the United States.

The Court also notes that not only does 42 U.S.C. § 1395(b)(3)(A) not provide for an action on behalf of the United States, the MSP's private right of action provision does not have any of the substantive and procedural safeguards found in the typical *qui tam* statutes such as the False Claims Act ("FCA") to which Plaintiff attempts to analogize the MSP. Unlike the MSP, the

11

FCA, which was enacted at around the same time, provides for: (1) service of the complaint and a written disclosure of material evidence on the Government before service on the defendant; (2) filing the complaint under seal while the Government conducts an investigation; (3) the intervention of the Government in the action, in which case it assumes primary responsibility for prosecuting the case and may limit the relator's participation; (4) settlement of the case by the Government over the objections of the relator; (5) consent of the Government before the case can be dismissed; and (6) a large percentage (75-80%) of any recovery to go to the Government. 31 U.S.C. §§ 3730(b)-(f). Instead of including such provisions in the MSP, Congress chose to delineate the actions which may be brought and this does not include an action "on behalf of" the United States.

In light of the foregoing, the Court concludes that Plaintiff does not have standing to pursue claims on behalf of the government under the MSP. Therefore, Defendant Sumner is entitled to dismissal of the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### 4. Failure to State a Claim

Quite apart from the issue of standing, Defendant Sumner is entitled to dismissal of the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Complaint fails to state a claim upon which relief can be granted. This is true because the MSP requires a Primary Plan to have a demonstrated

12

obligation to pay and Plaintiff alleges only an inchoate potential tort liability.

Section 1395(b)(3)(A) of Title 42 creates no cause of action against a party whose responsibility to pay medical costs has not yet been established. As the Eleventh Circuit in Glover explained:

> [S]ection 1395y(b)(3) . . . creates a private cause of action for double damages 'in the case of a primary plan which *fails* to provide for primary payment (or appropriate reimbursement) in accordance with . . . (2)(A).' Paragraph (2)(A) prohibits Medicare from paying for items or services for which payment can reasonably be expected to be made under a primary plan 'except as provided in subparagraph (B).' Subparagraph (B) authorizes Medicare to make conditional payments, but requires that '[a] primary plan, and any entity that receives payment from a primary plan, *shall reimburse* [Medicare] with respect to an item or service *if it is demonstrated* that such primary plan *has or had a responsibility* to make payment with respect to such item or service.'

Glover, 459 F.3d at 1307-08 (emphasis in original). Like the plaintiff in Glover, when Stalley filed his MSP claim, Defendants' responsibility to pay for items or services "had not yet been 'demonstrated' (for example, by a judgment)"[2] and thus its

---

[2]The MSP provides that "responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(2)(B)(ii). This Court rejects Plaintiff's suggestion that the "by other means" language would include such things as internal investigations, risk management programs, and internal peer reviews. Utilizing the canon of *ejusdem generis*, the phrase "by other means" requires a demonstration that responsibility has been determined by something akin to a judgment, admission, settlement, or release, Glover v. Philip Morris, USA, 380 F.Supp.2d 1279 (M.D. Fla. 2005) aff'd, 459 F.3d 1304.

13

"obligation to reimburse Medicare does not exist under the relevant provisions." Id. at 1308. "Therefore, it cannot be said that Defendants have 'failed' to provide appropriate reimbursement," id., and hence dismissal is warranted.

In an effort to avoid dismissal on the grounds that Defendants have not been found liable for having committed a tort (like the alleged battery in Glover), Stalley contends "Defendants' duties to reimburse the federal government for payments for medical care necessitated by its own conduct are quasi-contractual in nature." (Docket Entry No. 91 at 16). The contractual nature of the obligations purportedly arise from the Provider Agreement and the federal regulations.

Leaving aside that Plaintiff's complaint sounds in tort[3] and leaving aside the fact that Stalley is not a Medicare recipient and a stranger to the Provider Agreement, his attempt to shoehorn his claim into one arising under a quasi-contract ignores the fact that he alleges Defendants breached a written contract – the Provider Agreement– which sets forth detailed provisions governing providers' rights and obligations. See, Fletcher Realty, Inc. v. Hayslope Properties, 712 S.W.2d 478, 481 (Tenn. App. 1986)("It is a general rule of law that an implied contract or quasi-contract will not be

---

[3]Stalley makes assorted allegations in his Complaint which sound like a tort, e.g. Defendants "caused harm to Medicare recipients" and after admission to Sumner facilities patients suffered "in-house acquired pressure ulcers, malnutrition, dehydration, fecal impactions, falls, injuries associated with falls, and preventable injuries." Complaint ¶ 10).

14

imposed in circumstances where an express contract or agreement exists"). Moreover, couching the Complaint as being based on quasi-contract does not ameliorate the concerns expressed in <u>Glover</u>, 459 F.3d at 1308, as well as in <u>Catholic Health Initiatives</u>, 2006 WL 3091324 at *4 and <u>United Seniors Ass'n</u>, 2006 WL 2371977 at *4 that reading the MSP as creating a private attorney general cause of action against Medicare providers would drastically expand federal court jurisdiction and would circumvent the class-action requirements of Fed. R. Civ. P. 23, even though Congress expressed no such intention in its legislation.

"The intended beneficiaries of the statute are Medicare and the federal treasury, not [Plaintiff]." <u>Frazer</u>, 374 F.Supp.2d at 1082. "An individual has an economic interest under the MSP only when he or she is able to obtain a recovery and benefit from the bounty afforded by the statute for that effort." <u>Id</u>. Stalley does not fall within that category, nor does he suggest that there has been any determination that Sumner is liable to Medicare. He merely makes assumptions of Sumner's liability from various reports, peer reviews, risk management analysis, diagnostic codes, billings, and other documents and seeks to establish Sumner's liability and the amount of damages through "other means," i.e. this litigation. The Court finds that the MPS contains no such authorization or intention, and, therefore, no proper basis for the claims made. Accordingly, Sumner is entitled to dismissal for failure to state a claim upon which relief can be granted.

15

## IV. CONCLUSION

For the foregoing reasons, Defendant Sumner Regional Health Systems, Inc.'s Motion to Strike Response (Docket Entry No. 38) and Motion Requesting Oral Argument (Docket Entry No. 12) will be denied. That Defendant's Motion to Dismiss (Docket Entry No. 10) will be granted and this case will be dismissed as to all Defendants.[4]

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

---

[4]"Because an action cannot proceed solely against John Doe defendants, it is appropriate to dismiss this case in its entirety." Alphabet v. City of Cleveland, 2006 WL 3241785 at *1, n.1 (N.D. Oh. 2006).

16